(C. D. 1503)

FONTANA HOLLYWOOD CORP. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 26, 1953)

*Strauss & Hedges* (*James F. Donnelly* and *Harry A. Le Bien* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Harold L. Grossman*, special attorney), for the defendant.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Ekwall, Judge: This is a protest against the collector's assessment of duty on merchandise described as Ricotta Romana Salata cheese, imported from Italy on May 28, 1949, at 35 per centum ad valorem under paragraph 710 of the Tariff Act of 1930. It is claimed that the merchandise is properly dutiable at 5 cents per pound, but not less than 25 per centum ad valorem, under said paragraph, as modified by the trade agreement with Argentina, T. D. 50504, as Pecorino cheese, in original loaves.

The pertinent provisions of the statute and the trade agreement are as follows:

Par. 710. Cheese and substitutes therefor, 7 cents per pound, but not less than 35 per centum ad valorem.

Par. 710 [as modified by the trade agreement with Argentina, T. D. 50504]. Romano, Pecorino, Reggiano, Parmesano, Provoloni, Sbrinz, and Goya cheeses, in original loaves, 5¢ per lb. but not less than 25% ad valorem.

At the trial, plaintiff introduced into evidence the testimony of Raffaele Castelli, manufacturer of the cheese here involved, taken in Rome, Italy, before Josephine Pasquini, vice consul of the United States, pursuant to a commission of this court, dated May 25, 1951. Mr. Castelli stated that the imported merchandise was manufactured as follows:

The whole fresh sound milk of sheep is heated to the required temperature, suitable rennet is added to cause coagulation of the solids, then the paste is pressed into forms, salted and cured according to types desired.

He stated further that the word "Pecorino" means anything that is made from sheep's milk; that the word "Ricotta" means cheese cooked twice; that the word "Salata" means salty; and that the word "Romana" is an adjective derived from the name of the area in which the cheese is made. He added that the word "Pecorino" is applied to several types of cheese, namely, Toscano, Sardo, Romano Genuino, Pepato, and Incanestrato, indicating that all those cheeses are made from sheep's milk.

Plaintiff called the following witnesses: Ercole Lawrence Sozzi, importer and agent of foreign shippers, employed by the plaintiff corporation; Robert P. Goedert, importer and manufacturer of cheese, president of Bel Paese Sales Co., Inc.; and Paolo Alonge, importer of cheese and other food products, connected with Paolo Alonge, Inc. Defendant called Jacob Moskowitz, customs examiner of cheese and fish products; Sol Salinger, dealer in cheese and meat products, connected with J. S. Hoffman Co., Inc.; and Benjamin Villa, importer and dealer of cheese, and an officer of Otto Roth & Co. All of these witnesses had had many years of experience in handling cheeses and were well qualified to testify on the subject.

Their testimony brought out the following points: The term "Pecorino" means anything made from sheep's milk. When used in connection with cheese, it means a cheese made from sheep's milk. It does not identify any specific cheese. The term is not used alone in buying and selling cheese except that where a course of dealing has been established, the parties may refer to a particular type of Pecorino cheese, such as Pecorino Romano Genuino or Pecorino Incanestrato, simply as Pecorino. The witnesses referred to a number of kinds of cheese made of sheep's milk: Pecornio Genuino Romano, Pecorino Sardo, Pecorino Moliterno, Pecorino Tuscano, Pecorino Incanestrato, Faita Pecorino Romano, Ricotta Salata, and Pecorino Pepato. They also stated that an order from a new customer for Pecorino cheese would required some additional description in order to identify the cheese desired.

It further appears that some of the types of cheese above mentioned, such as Romano, Incanestrato, Sardo, and Pepato, are also. produced in Argentina and in this country, but cow's milk rather than sheep's milk is used. Where a seller carried Italian, domestic, and Argentine Incanestrato, for example, his customers would have to identify which kind was desired, either by country of origin or by the ingredient, cow's milk or sheep's milk.

The witnesses testified that the cheeses other than Pecorino listed in the trade agreement with Argentina, *supra*, Romano, Reggiano, Parmesano, Provoloni, Sbrinz, and Goya, are specific cheeses. Romano cheese may be made from either sheep's milk or cow's milk, but the others are made only from cow's milk. According to the evidence presented, some, at least, of these cheeses are produced in Argentina and the United States as well as in Italy.

The question before us is whether or not the imported cheese, which was made from sheep's milk, is classifiable under the provision for Pecorino cheese in the trade agreement with Argentina, T. D. 50504. It is uncontested that the merchandise was imported in original loaves.

The evidence establishes that the term "Pecorino cheese" does not refer to any specific cheese, but means that it is made from sheep's milk. It is also clear that there are a number of cheeses described as Pecorino, each of which is further identified by a separate and distinct name. Since the term "Pecorino" used by itself does not indicate any particular cheese, it must have been used by the negotiators of the trade agreement in a generic sense to denote cheeses made from sheep's milk. Any other construction would render the provision for Pecorino cheese nugatory. Such a construction is not to be adopted where any other interpretation is reasonable. *United States* v. *Baxter*, 9 Ct. Cust. Appls. 99, T. D. 37975; *Weill & Co. (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 11, T. D. 39890; *Charles T. Wilson Co., Inc.* v. *United States*, 28 C. C. P. A. (Customs) 63, C. A. D. 126.

The witnesses stated that they knew of no sheep's milk cheese produced commercially in Argentina or imported therefrom. If that is so, it might indicate that the negotiators of the trade agreement with that country were using the term "Pecorino" to refer to some type of cheese not necessarily made from sheep's milk. The evidence shows, for instance, that some types of cheese are made from sheep's milk in Italy and cow's milk in Argentina. However, it is stated in the Digest of Trade Data issued in connection with said agreement (p. 189):

* * * All the cheeses included in the concession to Argentina are made from cow's milk, except Pecorino, which is made from sheep's milk.

There is no indication, therefore, that the negotiators were using the term "Pecorino" in any special sense.

In view of the uncontradicted evidence as to the meaning of the term "Pecorino," when used in connection with cheese, we find that the term was used in the trade agreement with Argentina, *supra*, to refer to a general class of cheese which may be described as Pecorino, that is, made from sheep's milk. Each article coming within that class is to be regarded as enumerated as if the name of each and all of them had been set forth in the trade agreement. *United States* v. *Sears, Roebuck & Co.*, 20 C. C. P. A. (Customs) 295, T. D. 46086; *Charles T. Wilson Co., Inc.* v. *United States*, 38 C. C. P. A. (Customs) 19, C. A. D. 433. Since the evidence establishes that the imported merchandise is a type of Pecorino cheese and is in original loaves, it falls within the provision of the trade agreement for such cheese, as if it had been named therein. Said provision is, of course, more specific than that in paragraph 710 of the Tariff Act of 1930, *supra*, covering all varieties of cheese.

We hold, therefore, that the merchandise herein is properly dutiable at 5 cents per pound, but not less than 25 per centum ad valorem, under paragraph 710 of the Tariff Act of 1930, as modified by the trade agreement with Argentina, T. D. 50504, as Pecorino cheese, in original loaves. The protest is sustained and judgment will be rendered accordingly.