(C. D. 1660)

LEKAS & DRIVAS, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided November 23, 1954)

Siegel, Mandell & Davidson (Sidney Mandell of counsel) for the plaintiff.

Warren E. Burger, Assistant Attorney General (Harold L. Grossman and William J. Vitale, trial attorneys), for the defendant.

Before Ekwall and Johnson, Judges

Johnson, Judge: This case involves three shipments of merchandise described on the invoices as "Feta Cheese," entered for warehouse at the port of New York in February and April 1949. It was assessed with duty at 35 per centum ad valorem under paragraph 710 of the Tariff Act of 1930, as cheese, not specially provided for. While various claims are made in the protest, the one relied upon is that the merchandise is properly dutiable at 5 cents per pound, but not less than 25 per centum ad valorem, under said paragraph 710, as modified by the trade agreement with Argentina, T. D. 50504, as Pecorino cheese, in original loaves.

Paragraph 710, as originally enacted, and as modified, provides as follows:

Par. 710 [Tariff Act of 1930]. Cheese and substitutes therefor, 7 cents per pound, but not less than 35 per centum ad valorem.

Par. 710 [as modified by the trade agreement with Argentina, T. D. 50504]. Romano, Pecorino, Reggiano, Parmesano, Provoloni, Sbrinz, and Goya cheeses, in original loaves, 5¢ per lb., but not less than 25% ad valorem.

It was agreed at the trial that the merchandise was made from sheep's milk and that, in its condition as imported, it was not suitable for grating.

Plaintiff called Theodore Drivas, who has been connected with the plaintiff corporation for 25 years. He testified that from 1928 to 1935 he had been manager of the firm's office in Greece and that he had managed a cheese factory in Italy from 1925 to 1939. He had visited Italy in recent years, the last time being in 1952, and had observed the process of manufacture of Feta cheese in the factory of Kalantzi Brothers, the producer of the within merchandise.

Mr. Drivas testified that the cheese involved herein was imported in kegs containing 15 loaves, each weighing between 5 and 7 pounds, packed in layers, 3 pieces to a layer. According to his testimony and certain photographs received in evidence at the trial (plaintiff's illustrative exhibits 1, 2, and 3), the individual pieces of cheese were triangular in shape, one side curved and the other two straight, forming a point. Three pieces, when placed together, composed a round layer of cheese.

Mr. Drivas described the manufacturing process as follows: Sterilized sheep's milk is placed in a big vat and heated to a temperature of 60 degrees. Yeast is added, and the mixture is left to stand for an hour to an hour and a half, by which time it coagulates. The solid mass is cut into small pieces, which are placed in a round form, about 16 inches in diameter and 10 inches high. The material remains in the mold 2 or 3 hours to drain out the water (or whey) and is then cut into three sections by a "knife on squares." The pieces

are kept for 5 to 7 days on wooden shelves, where they are turned from side to side and salted two or three times daily. They are held in shape by the salt and by pressure applied by boards on the shelves. After the processing is completed, the pieces are packed in kegs and shipped.

The witness stated that in the last 2 years his firm has also manufactured a 2-pound square loaf of Feta cheese, but it is produced by the use of different forms than those employed in making the within merchandise. A sample thereof, said to be of the same consistency as the 5- and 7-pound loaves, was received in evidence as plaintiff's illustrative exhibit 4.

Mr. Drivas testified that the round form of the material could not be cured because it was too large. He explained that in that form it would take 30 to 60 days to cure and would then be a hard cheese, not a soft cheese, like the imported merchandise. He stated also that the product when in the round form is not a ripe cheese, cannot be sold, and is inedible. In his opinion, it is not Feta cheese until the processing on the shelves has been completed. He said that cutting it into triangular pieces is not done for the purpose of making it suitable for shipment, as it would be easier to pack in one round piece.

The witness was asked about Pecorino Romano cheese, with which he was familiar, and he testified that it was made in a different type of mold than Feta cheese and was kept in the mold 5 or 6 days to take shape, after which it was removed and processed for 90 to 125 days. The result is a hard cheese in the same shape as it was when removed from the mold and is known to the witness as cheese, in the original loaf. Witness Drivas stated also that Provoloni cheese is not made in a mold but is shaped by hand in a cloth and is then cured for 60 days. It is a hard or a medium-soft cheese and is shipped in the form it became when shaped in the cloth.

Defendant called Jacob Moskowitz, who has been cheese examiner for the port of New York since June 1940. He testified that he has visited many cheese factories in the United States, has read practically all the literature on cheesemaking, and has come in personal contact with many manufacturers throughout the world. He said that he was familiar with the process by which Feta cheese is manufactured and that, in his opinion, Feta cheese is first achieved in the round mold after the whey has drained off. He explained:

Feta cheese is also a Feta cheese shortly after the whey is drawn from the coagulated milk, in that shape it takes on the production, the beginning of Feta cheese. The curing of cheese, the various aging and stages of curing results in the Feta cheese. Feta cheese is a soft cheese cured in that form, and subsequently it is cut for the purposes of handling and shipping. Feta cheese could be sold in the original form in which it is made.

Mr. Moskowitz stated further that the product could be treated with salt when in the circular form and that several manufacturers in Italy start the curing process in the mold and merely cut up the piece for shipment. However, he had never seen Feta cheese imported in the large circular form. He said that 50 per centum of all Feta cheese he examined was of the type described by Mr. Drivas and about 90 per centum was in barrels, packed in 5, 6, or 7 layers.

Since the record shows, and it has been agreed by counsel, that the merchandise is cheese made from sheep's milk, it is classifiable as Pecorino cheese under paragraph 710, as modified, provided it has been imported in the original loaves. *Fontana Hollywood Corp.* v. *United States*, 30 Cust. Ct. 98, C. D. 1503. The sole question before us is whether it is in original loaves. Plaintiff's contention is that the triangular pieces are the original loaves, while the Government claims that the round form from which the pieces were cut is the original loaf.

The evidence establishes that during the course of manufacture the product is placed in a circular mold, but it is cut into sections before being removed from that mold and before the processing is completed. According to the uncontradicted testimony of Mr. Drivas, the product, when in the round form, not being completely processed, is not edible and is not salable. While Mr. Moskowitz stated that several manufacturers processed their product, or began to process it, in the round mold, he had never seen an importation in that form.

Paragraph 710, as modified, provides for Pecorino and other *cheese*, in original loaves. The term "cheese" is commonly used to designate a food product. Webster's New International Dictionary (1953 edition); Encyclopaedia Britannica, volume 5, page 333; *Kraft-Phenix Cheese Corporation* v. *Consolidated Beverage, Ltd.*, 107 F. 2d 1004, 1006. Since tariff acts are drawn in the language of commerce, which is presumptively that in common use (*C. J. Tower & Sons* v. *United States*, 41 C.C.P.A. (Customs) 195, C. A. D. 550), the term "cheese," as used in paragraph 710, as modified, must refer to an edible product. It follows that the term "cheeses, in original loaves" means the loaf form in which the product first became an edible cheese. In the instant case, that was the triangular form. While in Mr. Moskowitz's opinion, the round mass might have been processed so as to become an edible cheese, there is no evidence that it actually was, and, according to Mr. Drivas, it would not then have been the same type of cheese as that involved herein.

It is evident that Feta cheese is made by a different method than Romano or Provoloni cheeses, which retain the same shape during the entire manufacturing process. In our view, the imported form of Feta cheese is the first loaf of *cheese* produced by the process described, the round form being merely a shape which the material assumed

during the course of manufacture. Such form may be a loaf, but it is not cheese in loaf form; consequently, it is not classifiable as cheese, in the original loaf.

We hold, therefore, that the within merchandise is dutiable at 5 cents per pound, but not less than 25 per centum ad valorem, under paragraph 710 of the Tariff Act of 1930, as modified by the trade agreement with Argentina, T. D. 50504, as Pecorino cheese, in original loaves. To that extent, the protest is sustained. As to all other claims, the protest is overruled. Judgment will be rendered accordingly.